May it please the Court, my name is Mahesha Subramanian and it is my privilege to represent Michael W. Gahagan in these consolidated appeals. Congress authorized courts to grant attorneys fee awards under the Freedom of Information Act for three clear reasons. To incentivize public requests for information, to deter unlawful government withholding of information, and to penalize such unlawful withholding when it occurs. Granting FOIA fee awards to pro se attorney plaintiffs advances all three purposes within Congress' use of the flexible term attorneys fees, and Congress reaffirmed all three purposes when it passed the Open Government Act of 2007. For that reason, the Court should reaffirm its decisions in Casillas and ICC that pro se attorney plaintiffs may seek FOIA fee awards, and the Court should reverse the decisions below which disregarded FOIA's unique nature, as well as the rule of orderliness. Now the Court has asked the parties to address two particular questions related to the rule of orderliness. Before doing so, however, I'd like to briefly discuss the key differences between FOIA and Section 1988, because if the government can't overcome these differences, then there's no reason for the Court to revisit the rule of orderliness. Now there are five key textual differences that the Court should pay attention to that are present in FOIA and absent from Section 1988. The first is the catalyst theory. FOIA expressly provides that fees may be granted, quote, based on a voluntary or unilateral change in position by the agency if the complainant's claim is not insubstantial. That language matters because it serves the deterrence and punishment functions of FOIA's fee-shifting provision, deterring the government from litigating to the brink before producing documents. The second major difference between FOIA and Section 1988 is that there's a disciplinary provision that immediately follows the fee-shifting provision, which makes attorney's fees a necessary proceeding for requiring a proceeding to determine whether disciplinary action is warranted against a responsible officer or employee. There's no similar disciplinary trigger in Section 1988. Third, you have congressional reporting. Under USC 552e6a, the attorney general must report costs, fees, and penalties assessed under FOIA to Congress. And then under the disciplinary provision, the attorney general must submit an annual report to Congress about disciplinary proceedings which have been triggered in part by an award of attorney's fees. Since we're focused on the text, why doesn't the language fees incurred mean fees someone else is billing? You know, it would be one thing if it said that your time and expenses incurred, then I could see an argument that that would include a pro se person's time. But fees incurred to me indicates someone is charging you a fee. I mean, sort of Judge Garwood's argument in his dissent. Sure. I understand, Your Honor. And I think that the Casales majority is correct in terms of its analysis, which is to say that when an attorney devotes time to a case, they are incurring the value of that time. They are giving up time that they could be spending on other cases that would actually generate material fees. In that circumstance, it's no different in some ways than thinking about a restaurant owner who throws a dinner for his family. He's incurring a cost for doing that. It may be his restaurant. It may be his food. He's paid for it. But he's still incurring a cost. If it said incurred time or cost, I think you'd have a good argument. I guess it says fees incurred. That's correct, Your Honor. And we submit that the key language or the key term here is attorney's fees. And it's important to recognize that even if you kind of want to walk down the road that Kay laid out, what the Kay court said was that attorney's fees can mean an attorney was a representative in this case. You know, someone licensed to practice law, engaged in this case, and for that reason you have attorney's fees. Or it can mean that the attorney represented someone else. It's capable of reaching both of those situations. And so for that reason, the court then moved on to kind of a policy-based best guess because it didn't find the text or history of Section 1988 to be clear. Why would someone say someone who works for a district attorney's office or public defender who doesn't have a fee they normally charge, why should that person be entitled to fees but a doctor who takes the time to do a FOIA request shouldn't be? Well, for the simple reason that the term attorney is present in the term attorney's fees. The key thing to remember here is that the term attorney's fees, that language is flexible. It can cover a situation where an attorney is someone licensed to practice laws litigating the FOIA request, and it can cover the situation where a litigant has retained someone to litigate the FOIA request and that's an attorney. Is there any other court of appeals in the United States that has adopted that view of the text? Your Honor, all the other courts of appeal to look at this issue have gone the other way. Is there any district court in the United States that's adopted that? Well, yes, Your Honor. We cite in our reply brief the Barrett case, which considered this Court's decision in Casales to be binding and to have not been overruled by Kay with respect to this issue. I'm sorry, outside of the Fifth Circuit? Well, outside of the Fifth Circuit, I'm not aware of any case. So no court in the United States? No, Your Honor. And I want to emphasize on that point, while it may be true that the other circuits have gone the other way, as we note in our reply brief, statutory interpretation is about looking at text. It's about looking at history. It's about looking at purpose. It's not designed to be a popularity contest. And we think that the Fifth Circuit got this analysis right in Casales. It got it right in Kay. And then Congress reaffirmed that analysis through the Open Government Act of 2007. Through that act, it made fees a penalty against the agency by requiring the agency to pay for them. It enhanced the reporting provisions with respect to discipline to make sure that that was an effective trigger that informed Congress of what was going on. It established that the dominant purpose of the act is informational disclosure. That's something that's not present at all in Section 1988. So when you take all of that together, it is a resounding reaffirmation of what this Court had to say about the way FOIA's fee-shifting provision operates. What about the rationale given in Kay that if you allow a pro se attorney to get fees, it just provides a disincentive for the plaintiff to hire a competent independent counsel? Well, Your Honour, I'd like to speak directly to that point. There are important contextual differences as well as textual differences between FOIA and Section 1988. So it's worth exploring what is a FOIA case versus what is a Section 1983 case in which Section 1988 fees are available. First, look at the nature of the proceeding. FOIA is designed to be a speedy remedy in district courts for enabling citizens to obtain disclosure of information. That's what the Supreme Court said in EPA v. Mink. By contrast, a Section 1988 action is about a proceeding to establish monetary damages for civil rights violations. Now move on to the legal procedures involved here. As the D.C. District Court has said in a case aptly called Wisdom v. United States, FOIA is an iterative motions process for determining whether an agency has fallen short of the mark. Section 1988, on the other hand, is a full-blown trial process where you're dealing with ethical considerations about whether it's proper for an attorney to appear as a witness. The party has to frame a theory of the case, evaluate alternative arguments, and determine ways to cross-examine hostile witnesses. Counsel, I appreciate this argument, but hasn't the Supreme Court said over and over again that the fee-shifting statutes are supposed to be interpreted consistently? Well, Your Honour, let's go directly to question 2, which raises this point. Now, the Court in question 2 cites a series of cases in which the Supreme Court has indicated where fee-shifting provisions should be interpreted in a manner consonant to one another. For example, in Buchanan, the Court talks about the nearly identical provisions at issue. In Burlington, it says our case law construing what a reasonable fee is applies uniformly. In Zipes, the Court says fee-shifting statutes, similar language, is a strong indication that they are to be interpreted alike. And in Hensley, the Court says the standards set forth in this opinion are generally applicable in all cases. Now, take all of that together. The common denominator is you have the Supreme Court expressly saying our decision in this case is supposed to be generally applied across the board. There is nothing, not one word in K, in which the Supreme Court says this is designed to be applied across the board. What the Supreme Court says in K is in the end, the overriding statutory concern is the interest in obtaining independent counsel for victims of civil rights violations. It narrows its analysis to just civil rights statutes. And there is no comparable footnote, as there is in Zipes, as there is in Buchanan, as there is in these other cases, in K, when the Supreme Court clearly knew that it could include such a footnote if it wanted to, to indicate that determination. Let me ask you a question about the facts of these three cases that are consolidated. In one of them, your client was seeking his own FOIA records because of some bar dispute. So I understand that one is sort of off the table. But the other two, he was seeking immigration clients' records. Why couldn't he have filed the FOIA claims in his client's name and then we wouldn't be here? Well, I think that that's a great question, Your Honor, for two reasons. First off, it points to the importance of the rule of orderliness. Because the Fifth Circuit has said in Gonzales and in ICC, a pro se attorney plaintiff can file a FOIA request and then request fees when he litigates that case. My client relied on that precedent. Okay, I get that. But I guess my question is, let's say we go the other way now. Can't in future cases like that he can just file these FOIA claims in the name of his immigration clients? Well, to speak to that second point, Your Honor, my client's immigration clients may not want to be, in many instances and I would say submit in these instances, the named plaintiff against the government in a FOIA case. So as long as my — as long as Mr. Gahagan has authorization from the client. And they're the named plaintiff in an immigration case against the government. That's true, Your Honor. They're in the system. In the judicial system. Being on one side of that equation is different than being on the other. The point I would raise in this context, and this kind of draws us to the government's analysis about why the D.C. Circuit's thinking about this issue should be privileged here. What this Court has done in addressing this issue is elevate substance over form. In the D.C. Circuit, the D.C. Circuit has said, well, pro se attorney plaintiffs can't seek fees under FOIA. But if you're a law firm and you use your inside counsel to litigate, you can get fees. And if you're a small, closely held organization like the National Security Center, you can get fees. So under the D.C. Circuit's own analysis, what my client could have done here is said, well, my client is the law firm of Michael W. Gahagan and I'm representing it and therefore I'm entitled to fees. At the point at which that's the distinction we're talking about here, Michael W. Gahagan versus the United States, versus the law office of Michael W. Gahagan versus the United States, and that's the distinction on which the availability of fees turn, I think at that point we're kind of debating how many angels can dance on the head of a pin. And that's... Isn't the distinction one between an attorney-in-fact and not having an attorney-in-fact? It's not a distinction that's form over substance. Your Honor, I agree with you that the definition of attorney is important. And the definition of the attorney can simply mean someone licensed to practice law and it can likewise mean someone who is representing another. It can cover both of those situations. The question the Court has to ask is given Congress's use of that flexible language, what best serves the three clear purposes of this statute? Does it make sense to take a remedy that's designed to deter and penalize the government when it unlawfully withholds information and to say that unlawful withholding, which is unlawful whether you have a represented plaintiff or a pro se attorney plaintiff, and say, well, we're just going to narrow it to one situation. I don't think that that makes sense in the context of either thinking about fee shifting in general or in terms of the principles that the Supreme Court has enunciated about both fee shifting and statutory interpretation since Kay was decided. And if the Court has any doubts about that, look at something like Octane Fitness in which the Court, looking at the fee provision under the Patent Act, had to determine whether the Federal Circuit had appropriately imposed an inflexible framework on the use of the term exceptional in terms of saying you can award fees in exceptional cases. And the Court said, no, you can't limit that to just bad faith cases or sanctions cases. You have to give the term the full breadth that it deserves. And here, that's all we're asking in terms of thinking about in a big picture way, is it important to serve all three of these functions and have the other case issue grappled with any of those functions? And I think, respectfully, the answer to that question is no. And the clearest indication of that is if you look at cases like, for example, the Eleventh Circuit's decision in Wray, the Court says Wray makes no arguments that the Congressional policy behind Section 1988 is not the same policy behind FOIA. Well, how can that case in which a party made no arguments then be a precedent for thinking about these issues going down the road? So, what this all comes back to, I think, in the end, is an observation that this Court actually made before Kaye, before Casales, before ICC, in a case called Coffield v. City of Atlanta. And in that case, the Court said, and I quote, the history, language, and purpose of the Freedom of Information Act differ significantly from those of the civil rights statutes. Those differences often render decisions under one of the statutes inapposite to cases arising under the other. That's exactly what we have here. And your position is that that language would survive Buchanan? Well, it's not a question of surviving. It's simply a question of saying when the Supreme Court says that it wants to articulate a bright-line rule to govern all fee-shifting cases, it says so. And in that circumstance, this Court should absolutely follow it. Then the burden on the government is point me to Kaye, where in Kaye the Supreme Court says something like that. And it doesn't. And we know that for two simple reasons. Both the government on appeal and the District Court below, the farthest that they could get in terms of dealing with these precedents is to say there was an implicit overruling. If there had been a bright-line statement by the Supreme Court, you could go much farther than an implicit overruling. And we also know it because the government made this exact same argument in ICC that how you interpret FOIA should be governed by Kaye. And this, three years ago, the Supreme Court rejected Kaye and rejected it based on the government's 28-J letter. We're not asking for any different results here. Alright, thank you. We'll hear from the government now. Mr. Mansfield. Whenever you're ready. Thank you, Your Honor. May it please the Court, good morning. My name is Peter Mansfield with the U.S. Attorney's Office. Here on behalf of all of the federal agency appellees in this consolidated appeal. Three District Court judges, Judge Feldman, Judge Engelhardt, and Judge Zaney, all correctly concluded that the Supreme Court's 1991 decision in Kaye v. Eller constituted an intervening, unequivocal change in the law that overruled this Court's 1983 case of Cazalet v. Department of Justice. For that reason, this Court should affirm the three District Court judges' decisions denying attorneys' fees under the Freedom of Information Act to the pro se attorney appellant, Michael Gahagan. I would like to begin with the Court's two questions that were sent via the clerk order last week. As you can expect, we disagree with the appellant on the answers to those questions. I can answer them now with confidence and affirmatively. That is to say, an unequivocal Supreme Court holding arising under one statute may overrule circuit precedent arising under another statute. As to the second question, the Supreme Court has consistently and expressly held that the statute ought to be construed harmoniously in conjunction with one another and in a similar fashion. So doubling back to the first question, the fact that Kaye arose under the Civil Rights Act is merely an incidental feature of that case. The Civil Rights Act is not integral to the Court's analysis nor are specific provisions of the Civil Rights Act indispensable to the Supreme Court's holding. To put it another way, the Civil Rights Act was merely the vehicle or the instrumentality that transported a discrete and cross-cutting issue of law to the Supreme Court. It could have been that discrete issue of law could have been delivered under any number of federal fee-shifting statutes, and I believe there's over 100, somewhere between 100 and 200. It could have been an environmental statute, could have been FOIA, could have been EJA, could have been any number of remedial federal statutes. It just happened to be the Civil Rights Act under Kaye. But that's not dispositive of the issue before the Court. Question one asked whether an unequivocal Supreme Court holding under one statute could affect an overruling of circuit precedent under another. I'll give you three examples where that very thing has occurred. The first example was cited in our brief at page 24. That's Hoskins v. Beck and Van Lines. In that case, this Court looked at the Supreme Court's preemption analysis arising under the National Bank Act and held that that overruled circuit authority under the Carmack Amendment to the Interstate Commerce Act. Two different statutory screams. That is not dispositive. The overruling occurred in Hoskins. The second example was a case that was decided within a week of the appellees filing their brief. That's Stokes v. Southwest Airlines, 887 Fed Third 199, a 2018 case. In that case, this Court looked at the Supreme Court's analysis on the existence of a private right of action under Title VI of the Civil Rights Act and held that that overruled circuit authority arising under the Air Carrier Access Act. Two different statutory schemes. The overruling occurred in Stokes. Third example. It's a criminal matter, but I think it's on point. United States v. Rodriguez. It's a 2010 case. 602 Fed Third 346. And let me add, because these aren't in our brief, I'm happy to do a letter brief on this under Rule 28a if it would be helpful to the panel. I don't want to overburden the record. In Rodriguez, this Court looked at Supreme Court decisions on vindictive prosecution arising under the Fourteenth Amendment, which, of course, applies to the states, and held that that Supreme Court authority overruled circuit precedent under the Fifth Amendment, which, of course, applies to the federal government. Two different constitutional amendments targeted to two different governmental actors. Nonetheless, the latter overruled the former. Three examples that answer Court's question number one. As far as the Court's question may suggest or the appellant may argue that there was some bright-line categorical rule that prohibits the use of Supreme Court authority under one statutory scheme to overrule circuit precedent under another, the three cases that are string-sided after the Court's question number one do not stand for a bright-line categorical prohibition on that occurring. The Diaz-Esparza case, on its very best day in 2017, the day after it was decided, was a non-precedential, unpublished per curiam. Of course, that's been overruled and vacated by the Supreme Court, which is vindication, really, for the appellant in Diaz. That's because of the Supreme Court's decision in DiMea, which, of course, extended Johnson to apply to Rule 16b. I'm sorry, Section 16b of Title 18. The Alcantar case, again, that looked at the Affordable Care Act, which, of course, was a novel decision, a fractured opinion, did not overrule Supreme Court authority under Lopez and Morrison, which this Court relied on to find Section 922G to be constitutional. And finally, the Jacobs v. National Drug Intelligence Center case. There existed a circuit split on recoverable damages under the Privacy Act for 25 years. There had been no intervening legislation or Supreme Court opinion. As a matter of fact, the Supreme Court, in the case that the appellant was saying overruled circuit precedent, in that very case, the Supreme Court cited Fifth Circuit authority as an example of an issue they were not deciding. Counsel, so you have two different lines of our rule of orderliness cases. Some that say this Supreme Court opinion under this statute can't overrule Fifth Circuit precedent under this statute, and some that say the opposite. What do you understand the distinction to be between where intervening Supreme Court precedent does affect a different statutory precedent versus where it doesn't? I can do no better than to quote Stokes on this issue. The first thing is we need an unequivocal holding from the Supreme Court. We can't have a hint. We can't have a forecast. We can't just have merely illuminating discussion, sort of hypothetical discussion of a very abstract legal issue. It's got to be on point. It's got to be clear. It's got to be unequivocal. That's the standard that we use to evaluate the clarity of the intervening precedent. That's what Stokes says. But, and this is an important distinction, and I think one where the appellant gets a little bit hung up on in his reply brief. When the Supreme Court expressly or implicitly overrules one of our precedents, we have the authority and obligation to declare and implement this change in the law. So, first, do we have an unequivocal holding from the Supreme Court if the answer is yes? Question number two, does that holding expressly or implicitly overrule one of our precedents? If we're dealing with a different statutory scheme, we can immediately eliminate expressly. It's going to have to be implied because it would flow from the discussion. It's a necessary implication of the Supreme Court's unequivocal holding. I hope that answers your question, if not. Are you familiar with the Johnson case that dealt with the definition of crime or violence? That's exactly the issue in the Diaz-Esparza case, was whether Johnson applied to 18 U.S.C. statutes. Now, you know, that's an identical definition, a virtually identical definition within various guideline provisions and statutes. The Supreme Court said one of them. I think it was the ACA. It was vague, unconstitutionally vague. And that overruled our authority. And then there was another statute that came up and we said no. It was in a different statute, so it doesn't apply to this case. Now, how do you distinguish that? I think originally in Johnson, in the Diaz case, this court said in that unpublished non-presidential per curiam that the holding in Johnson did not apply to 18 U.S.C. 16B. But in the DeMeya case, Justice Kagan, relying on Johnson, said, oh, yes, it did. That basically the Johnson analysis control system. We didn't recognize a Supreme Court decision in Johnson in a statute that had the identical language. One could argue that the appellant in Diaz was vindicated and Diaz was wrongly decided because, again, DeMeya relies on Johnson. But that being said, this is a different situation. And we ended up going en banc in a published decision in Gonzales-Longoria. It was a divided court that said we're not going to extend it to 16B. And then DeMeya took the other view. So it wasn't just an unpublished. But there was some slight difference in language that was a focus of the disagreement, though. And there was a disagreement. I think this gets back to Judge Oldham's question. There's been unanimity since Kay on this issue. I think the Supreme Court, DeMeya was 5-4. The Supreme Court disagreed 5-4 whether Johnson applied to that different statute. Kay's a 9-0 decision. So there was unanimity in the very first instance from the first time this issue came to the Supreme Court. 9-0 decision. The analysis is short. It's to the point. It's general and it's broad. Let me ask you, let's assume you're right that we can use Kay to reconsider our precedent on a FOIA statute. Let's assume, for the reasons you've said, that's right. What about the fact that the Court first had that opportunity in the state of Texas versus ICC case and didn't seem to change its mind about our precedent? I mean, it says, characterizing our case law, and then it says, I mean, this to me is a statement of what the law is, in some, if a FOIA plaintiff has actually and reasonably incurred fees, that is, a lawyer has handled his case, even if the lawyer is the plaintiff himself, then you get fees, it basically says. ICC restates Cazalet's holding. First of all, let me preface my comments by saying we endorse, fully support, and defend Judge Feldman's analysis on this issue, which was comprehensive and thorough. That is dicta, and the reason it's dicta... But he didn't know that, and I give the other side credit for this, he didn't know that the 28J letter had been submitted saying, look, Kay's out there. That 28J letter was submitted in the third of the consolidated cases on appeal. That did not change Judge Zaney's analysis. We letter-briefed it to Judge Engelhardt and Judge Feldman, neither of which reconsidered it after being informed of the 28J. There was no Rule 59 or Rule 60 motion filed either, by the way. Forgetting what the district judges did, tell me why. I will, I will. Why that 28J was on the mind of, I mean, Judge Higginbotham wrote the opinion, I'm sure he saw that 28J. One could assume, but they don't mention Kay in ICC. And you'll see in the Burka decision and in the Second Circuit, Pietrangelo versus Department of Army, they kind of footnote ICC and say, it's rather curious their citing to Kaslay, which seems to stand in stark contrast to the Supreme Court and Kay, but nonetheless, because of the close proximity of the decisions, we're not going to read too much into that. Now, they didn't know about the 28J letter either, but let me answer your question. The reason it's dicta is because Kaslay is not the controlling rule of law in ICC, and the reason we know that is because the district court in ICC relied on Kaslay to deny fees, and the Fifth Circuit reversed, also relying on Kaslay's discussion of legislative history, but the point of the matter is Kaslay's holding its discussion of legislative history is kind of ambiguous as to the issue in ICC which has represented states, and the reason the district judge and the Fifth Circuit disagreed is on the question of indigency, or inability to pay for an attorney. I agree, it's a different issue, and deciding the Kay issue wasn't certainly necessary, but we have our case law on dicta says something is not dicta if it was essential to the holding, I think everyone sort of recognizes that, or if it's a statement, an announcement of legal principles. I'm paraphrasing a bit, but it seems to me what I read is a statement of governing legal principles. Explication of governing legal principles. Does the holding of Kaslay govern and dictate a result in ICC? The answer is no, or else it would have been an unpublished procurium, an easy one. And it wasn't, because, look, no one can confuse Mr. Gahagan with the state of Texas. No one can confuse me for United States Citizenship and Immigration Services, despite the fact that I work for the government. There's a fundamental legal difference between a juridical, artificial entity like a state or federal government, an agency, a partnership, a corporation, an LLC, and a natural person. I mean, it's a legal difference, it's a metaphysical difference as well. Kay has focused on the latter situation and in footnote 7, they address this argument. They said, the argument was made that doesn't it work an imbalance that a non-profit can get attorney's fees, but an individual can't? And the case court said, not at all. That's entirely consistent, because a non-profit has to appear in court through retained counsel, whereas an individual could appear on his or her own behalf. So there's a fundamental difference, again, between the issue decided in ICC, the discreet legal issue, and the issue before the court right now, and the issue before the court in Casale, the issue before the Supreme Court in Kay. The difference between a state entity and a natural person, those are not analogous situations. What if the ICC case, what if there were a footnote that said, we saw Kay, but we don't think that should change any of our case law? It's still going to be essential to the holding, right? But it would be an explicit recognition that the court thought about Kay's effect on our case law. In that scenario, I would agree with you, we would not be before the court right now, because we wouldn't have raised the argument in district court. If ICC was an explicit and express... Why wouldn't you say that was dicta? Because it was unnecessary to the decision about whether states were able to get... It shows at least that the court considered and resolved that issue. I mean, perhaps... I mean, those are two different things. Is it dicta? And then there's, was the... I mean, that might help you. Maybe you're arguing, one, it's dicta, and two, the court never considered it, because that footnote is hypothetical, of course. That footnote's not there. Again, I would fall back with what I began with, which is, we're going to stick with Judge Feldman's analysis on this, which I believe is correct. It's dicta. It was not the controlling rule of the law, nor did it govern the outcome in ICC. The legal issues were distinct, and there was no pro se individual attorney appearing before the court in ICC. But, if ICC contained an express statement that says, we've considered the viability of Cazalet in light of Kay, and find that Cazalet is still good law, the rule of orderliness... Maybe I can make the argument, I have to make it to the en banc court. I couldn't make it to a three-judge panel, Judge Kallis, and I think that's the best answer to your question about the posture I'd be in today if ICC was express and very clearly considered the ongoing viability of Cazalet in light of Kay. But, it's silent on that issue, and again, I go back to the D.C. Circuit, I go back to the Second Circuit in Berka. They've acknowledged that ICC, it's... I don't believe it's problematic for my argument here, but as Judge Feldman said, it's a little bit of a glitch in the analysis that we do have to deal with. So, let me jump and pivot to the court's second question. And the answer to that question about the consistency that the Supreme Court demands when construing federal fee-shifting statutes. The answer to that question, I believe the best phrase came from Professor Greg Sisk. This is from 25 years ago. This is before even Buchanan. In a law review article, he said, the Supreme Court consistently has expressed an intent to harmonize all federal fee-shifting statutes under a common regime of doctrine. We're here to talk about a common regime of doctrine. Kay is a bright-line rule to apply to every such case to address a systemic Supreme Court interest in individuals retaining counsel. That common regime of doctrine is especially appropriate when there's no meaningful distinctions in the legislative purpose behind the fee-shifting statutes or the text. Judge Costa, you asked a question about the text of the fee-shifting provision under FOIA. Reasonable attorney's fees incurred. Incurred is a transitive verb. Takes an object and an indirect object. The object, the attorney's fee. The indirect object, the attorney's fee is incurred to whom? To the attorney you hire. That's the only way to interpret that provision, that plain text provision. It goes back to the Kay didn't rely on that textual analysis. No, but they did. They say an attorney by dictionary definition, they cite Blacks, Websters, Oxford Old English. The very definition of attorney necessarily requires an agency relationship. An agency relationship requires two individuals to confect a principle. But they don't rely on the incurred. They don't focus on that part of it. Interestingly, the Civil Rights Act does not include the word incurred. We have a stronger textual argument to apply Kay to FOIA than even under the Civil Rights Act. You cannot bill yourself. You can't hold yourself in default for non-payment. You can't sue yourself for collection. You can't declare bankruptcy to get relief from yourself as creditor. One cannot incur an attorney's fee to himself or herself. That makes no sense textually. The statutory purposes, again, and we discussed this in our brief, and I'm not going to belabor the point, but Kay relied on principles gleaned from FOIA litigation from the Sixth Circuit's decision at Falcone which created a circuit split with this court in Kaselai. The objectives, Judge Davis articulated one, to allow plaintiffs to obtain competent counsel to prosecute meritorious claims and protect statutory interests without a concern for costs, to remove the financial obstacles to getting an attorney. Two, to encourage claimants to incentivize them to seek legal advice and not go at it alone and be at a disadvantage in a contested case. And I'll take issue with this distinction between the Civil Rights Act and FOIA as far as one's more hotly contested than another. Bottom line, it's adversarial litigation. In the American system, there's a plaintiff and defendant each represented by counsel. Whether or not a case goes to trial is immaterial. The advice of an attorney is a third point. The point of the fee-shifting statute is to ensure the detached and objective perspective of an attorney. The Supreme Court says the judgment of an independent third party is important to ensure that reason rather than emotion dictates the course of action. This stands in stark contrast to what this court said in Kaselai in the majority opinion where it said that we can find no justification in the legislative history that Congress wanted the objective and detached perspective of an attorney. Rather, we think Congress just wanted a vigorous advocate and a pro se attorney can do that just as good as a hired attorney. So, it goes back to the Garwood dissent, Judge Kouse. I think you made that point. The Supreme Court, if you trace that thread about objectivity and detached perspective from Kay through the Sixth Circuit in Falcone all the way to the Judge Garwood dissent in Kaselai. This court does have a road map and my time is running very short, so I'll conclude by saying this. Judge Feldman's 22-page opinion, thorough, comprehensive, we adopted. We encouraged the court to affirm, but to do so for the reasons that Judge Feldman articulated. As well, the D.C. Circuit and BRCA addressed this exact situation. It's really a trilogy of cases. It's Benavides, BRCA, and Kuritsky, but BRCA applied to pro se attorneys under FOIA, so that is our best case. The D.C. Circuit had no hesitation in three different cases for a three judge panel to declare D.C. Circuit prior precedent overruled by Kay. So, matter of fact, in the D.C. Circuit, the standard isn't unequivocal. It's that Supreme Court precedent must eviscerate circuit precedent, a very vibrant, almost violent word. And in Kuritsky, the court said, we have no difficulty in concluding that Kay did that very thing to circuit precedent. So we encouraged the court to file the lead of the D.C. Circuit in BRCA. If there are no further questions from the court, we urge the court to affirm the decision denying attorneys' fees under the Freedom of Information Act to the pro se attorney appellant. Thank you. All right. You have five minutes for rebuttal. I was a history major in college, and one of the things that I learned, other than how dismal the market is for history professors, is that it's really easy to make assumptions about the past and then not check those assumptions. So let's check some of the assumptions that the government made in its remarks just a moment ago. So many of the things that the court have assumed about FOIA's fee award provision and the case law surrounding it is wrong. Courts have assumed that FOIA fees are not meant to penalize the government. That's what the Sixth Circuit said in Falcone. And yet, we know from what Congress did in the Open Government Act, it imposed these fees as a penalty on agencies and included a disciplinary provision. Courts have overlooked that the district court here, for example, overlooked the fact that the ICC court had K squarely in front of it through a 28-J letter. And so, in the face of those types of facts, what the government argues today is now, well, we think we can find unequivocal overruling in what the Supreme Court did in K. And I listened very carefully to what the government had to say, but they did not cite a single sentence in K that amounts to an unequivocal overruling. Certainly not a single sentence that resembles any of the sentences that are in Burlington or Hensley or any of these other cases where the court has said, well, there's general language or we mean this to apply across the board. So where is that language in K? It is nowhere to be found. What the Supreme Court instead says in K is, we've looked at the text, we find it ambiguous. We've looked at the history, we find it ambiguous. We have no choice but to make a policy-based best guess about what this statute means. And so what I submit to the court is, does it then make sense to say that in a case where the Supreme Court was making a policy-based best guess about how to interpret a civil rights statute, that that precedent should then be understood to overrule every past or future case in which a court has said, well, we looked at this provision and we think the history is clear, or we think the text is clear. I don't think that makes sense in terms of the rule of orderliness or as just a plain matter of statutory interpretation. And those are the rules that really the government is asking you to rewrite here. So once we kind of clear away all of these false assumptions that have been made about FOIA's fee-shifting provision and the case law surrounding it, I think the wisdom of Kazala's and ICC is clear. And if the court has any doubts about that, I would ask you to consider what the Supreme Court had to say 150 years ago in a case called United States v. Hartwell. It said, when the words are general and include various classes of persons, there is no authority which would justify a court in restricting them to one class and excluding others where the purpose of the statute is alike applicable to all. The purpose of Kazala's is applicable to represented plaintiffs and pro se attorney plaintiffs in terms of incentivizing governmental disclosure of information, penalizing unlawful withholding and deterring such unlawful withholding in the first instance. The court should not hesitate to enforce that reality. And as a final point, I know that the government would like to write off most of Texas v. ICC's dicta. That's certainly what the courts did below. But I think here some wisdom from Judge Friendly bears directly on the point. Judge Friendly said a court stated, and on its view necessary basis for deciding does not become dictum because a critic would have decided on another basis. That's essentially what the government is arguing here today. That it wishes ICC had adopted Kay's analysis about institutional plaintiffs and gone in that direction. That's not what the ICC court did. Instead the ICC court had before it the government's argument that in Kay the Supreme Court had established a general principle that fee shifting provisions are designed to incentivize objective representation. And that principle should be cross-applied to FOIA. And in the face of that clear argument in the 28th Jail Letter, what three distinguished members of this court did was say, no. Cazales is right. The purpose of this provision is about more than just representation. It's also about penalizing unlawful government withholding. It's also about deterring unlawful government withholding. And all of those purposes are served when both pro se attorney plaintiffs and represented litigants are contemplated and fee awards are granted under the statute in both situations. So with that in mind, I don't think that there remains really any other basis on which to consider overturning either Cazales or ICC. And as a final point regarding the rule of orderliness, that rule derives its value from stability and predictability. If the court decides to create an exception for fee shifting provisions today, it may be asked to create an exception for immigration cases tomorrow, for criminal cases the day after that, because there's a lot of I don't think that that's something that this court wants to do if it continues to value the stability and predictability of law. For that reason, we would ask the court to reverse the decisions below. Okay. Thanks to both sides for a vigorous argument. The case is submitted.